UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT A. MOUTHAAN,

    Plaintiff,

v.                                           Case No. 1:16-cv-1274
                                              Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB).

Plaintiff alleged a disability onset date of July 1, 2007, which he amended to December 5, 2013. PageID.59, 257. Plaintiff identified his disabling conditions as: chronic lead poisoning, hormone cessation; lead poisoning; testicular hypofunction; depression; hormone imbalance; fatigue; hypogonadal-pituitary; hypodrenalism; thyroid disorder; mineral deficiency; and toxic effect of metals. PageID.361. Prior to applying for DIB, plaintiff completed the 12th grade and tool and die apprentice trade school. PageID.262. He had past employment as a machinist and store laborer. PageID.69, 263. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on January 8, 2016. PageID.59-70. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.    ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended onset date of December 5, 2013 and met the insured status requirements of the Social Security Act through December 31, 2013. PageID.61. Thus, the relevant time period under consideration in this appeal

is less than one month. At the second step, the ALJ found that through the date last insured, plaintiff had severe impairments of: a history of elevated lead blood levels/malabsorption syndrome; low testosterone levels; chronic fatigue syndrome; anemia; obsessive compulsive disorder; depression; personality disorder; cognitive disorder; and obesity. PageID.61. At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.62.

The ALJ decided at the fourth step that:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). The claimant is able to lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight-hour workday; stand and/or walk for six hours in an eight-hour workday; never climb ropes, ladders, or scaffolds; occasionally climb ramps and stairs; frequently balance; and has no limitations in stooping, kneeling, crouching, or crawling. The claimant must avoid concentrated exposure to respiratory irritants such as fumes, odors, dust, gases, or poor ventilation. The claimant must have no contact with the public; only occasional contact with coworkers and no tandem tasks; only occasional contact with supervisors when tasks are being performed as directed; and must have only occasional changes in job duties or setting. The claimant is able to perform simple, routine, repetitive tasks.

PageID.64. The ALJ also found that through the date last insured, plaintiff was unable to perform any past relevant work. PageID.69.

At the fifth step, the ALJ determined that, through the date last insured, plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.69-70. Specifically, the ALJ found that plaintiff could perform the requirements of light and unskilled occupations in the national economy such as assembler of small products (63,000 jobs), mail clerk (54,000 jobs), and packing line worker (57,000 jobs). PageID.69-70. Accordingly, the ALJ determined that plaintiff has not been under a disability, as

4

defined in the Social Security Act, from December 5, 2013 (the amended alleged onset date) through December 31, 2013 (the date last insured). PageID.70.

### III. DISCUSSION

Plaintiff set forth three issues on appeal:

**A. The ALJ's Decision was not based on substantial evidence because he failed to give proper weight to the findings and opinion of plaintiff's treating physicians and psychologist, as required by 20 C.F.R. §404.1527(c) and (d).**

**B. The ALJ failed to address factors such as, but not limited to, the length of treatment, frequency of examination, and nature and extent of the treatment relationship, when he rejected the findings and opinion of plaintiff's treating physicians and psychologist, as required by 20 C.F.R. §404.1527(d).**

Plaintiff contends that the ALJ failed to address the medical opinions of his treating physicians and psychologist. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the

5

objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

1. **Treating physician Shahnaz Ali, M.D.**

Plaintiff contends that the ALJ failed to adequately evaluate the opinion of treating physician Dr. Ali. The ALJ addressed the doctor's opinion as follows:

> On November 5, 2015, the claimant's treating provider, Shahnaz Ali, MD, provided a medical source statement regarding the claimant's capabilities (Ex. 21F). Dr. Ali opined the claimant is not capable of full time work activity, even at the sedentary level (Ex. 21F/l). He further indicated the claimant would be unable to complete an eight-hour workday, lift more than 10 pounds, and stand more than two or three hours per day spread throughout the day. Dr. Ali further opined the claimant should have the option to alternate positions between sitting and standing. Dr. Ali noted that these limitations have existed since March 2013, when he began treating the claimant. In addition to the narrative opinion, Dr. Ali completed a check-box form opining the claimant could only lift and carry up to 10 pounds occasionally; sit five hours total, stand one hour total, and walk one hour total in an eight-hour day; perform frequent reaching and manipulative movements; and perform frequent climbing of stairs and ramps, but only occasional climbing of ladders or scaffolds, balancing, stooping, kneeling, crouching, or crawling (Ex. 21F/2-5). While Dr. Ali is a treating provider, there is no objective evidence in the record to support the extent of the limitations opined. The record documents the claimant's significant subjective complaints, but only includes minimal examination findings. Overall, the exam findings are essentially normal (Ex. 20F).

6

> Dr. Ali has also provided minimal rationale that does not explain why the claimant is limited to lifting no more than 10 pounds and is restricted in his ability to stand and walk. The record fails to support such limitations and this opinion is given little weight.

PageID.68.

The ALJ provided good reasons for the weight assigned to this opinion, which was not well supported by medically acceptable clinical and laboratory diagnostic techniques. The doctor's letter which accompanied the check-box medical source statement attributes these extreme limitations to chronic fatigue from chronic lead exposure. The doctor stated that these limitations were present when he first treated plaintiff in March 2013, which means that plaintiff had these limitations before his alleged disability commenced. The doctor provides no further information to explain how he determined these limitations. Based on this record, the ALJ could properly assign the doctor's opinion little weight. *See Hernandez v. Commissioner of Social Security*, 644 Fed. Appx. 468, 474 (6th Cir. 2016) (noting "[w]e have previously declined to give significant weight to rudimentary indications that lack an accompanying explanation," and pointing out that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best") (internal quotation marks omitted). Accordingly, the claim of error will be denied.

### 2. David Pawsat, D.O.

Plaintiff states that he treated with Dr. Pawsat, who later gave an opinion that plaintiff's exposure to lead had led to both depression and fatigue, which had been confirmed through testing. PageID.1350. Plaintiff contends that the ALJ did not address Dr. Pawsat's opinion and give it controlling weight. The opinion referred to is a "to whom it may concern" letter from June 30, 2010, in which the doctor stated that "[i]t was recently found through testing that Mr. Mouthaan has an increased lead heavy metal burden," that "[t]wo common symptoms of

7

this may be depression and fatigue, both of which Mr. Mouthaan has experienced for many years," and that "In light of Mr. Mouthaans [sic] medical issue, I believe his whole body heavy metal burden of lead may be due to a [sic] environmental lead exposure while working at Mattson Tool and Dye, a job that may be associated with high levels of lead exposure." *Id*.

As an initial matter, Dr. Pawsat's letter is not an opinion. *See* 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, *what you can still do despite impairment(s), and your physical or mental restrictions*.") (emphasis added). In addition, plaintiff has failed to demonstrate how this letter, which addressed plaintiff's condition more than three years before his alleged disability onset date, is relevant to his current DIB claim. Accordingly, this claim of error will be denied.

3. **Brenda S. Zook, M.D.**

Plaintiff stated that Dr. Zook treated him from about September 2003 through July 14, 2010, when she provided an opinion regarding his condition. Plaintiff's Brief (ECF No. 10, PageID.1439). This opinion was another "to whom it may concern" letter, stating in pertinent part that since "at least September 2003":

> [Plaintiff] has been treated for multiple episodes of significant depression as well as hypothyroidism, testicular hypofunction, as well as multiple sinus congestion complaints. He has recently been found to have a lead toxicity demonstrated through urine lead levels. The effects of blood toxicity in adults does show a link between blood toxicity and all of the diagnoses that he has been treated for. His only known exposure to lead was when he worked at the Mattson Tool and Die Company between 1987 and 1991.

PageID.1352. This letter, like Dr. Pawsat's letter, was not a medical opinion under the regulations. *See* 20 C.F.R. § 404.1527(a)(1). In addition, this letter predates plaintiff's alleged onset date by

8

more than three years.  Plaintiff has failed to demonstrate how this letter is relevant to his current DIB claim.[1]  Accordingly, this claim of error will be denied.

### 4. Janice M. Bentley, PsyD.

Plaintiff contends that the ALJ failed to give proper grounds for the weight assigned to Dr. Bentley's opinion, and giving her opinion less weight than the other mental health opinions cited by the ALJ.  The ALJ addressed Dr. Bentley's opinion as follows:

> Also in November 2015, treating provider Janice Bentley, PhD, provided a medical source statement on a check-box form regarding the claimant's mental capabilities (Ex. 25F). Dr. Bentley opined the claimant had marked limitations in several areas of functioning. While the undersigned concurs that the claimant would have difficulty performing complex tasks, the evidence does not support marked limitations in relating to coworkers, dealing with work stresses, and maintaining attention and concentration (Ex. 25F/1-2). The claimant has been able to interact with medical professionals appropriately and attends church weekly. Furthermore, all cognitive testing of record indicates the claimant is able to maintain attention and concentration for simple tasks (Ex. l0F; 16F). Dr. Bentley also opined the claimant would have extreme limitations in demonstrating reliability (Ex. 25F/3). Again, there is no evidence of record that would support extreme limitations in this area. The claimant is able to attend appointments, attend church, and maintain his activities of daily living. Additionally, it should be noted that Dr. Bentley does not indicate these limitations relate back to the period at issue and she provided no treatment records to support her opinion. Overall, the objective evidence fails to support Dr. Bentley's opinion and the opinion is given little weight.

PageID.68.

The ALJ gave good reasons for the weight assigned to this opinion.  "[I]nsured status is a requirement for an award of disability insurance benefits." *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir.1984).  Since plaintiff's insured status for purposes of receiving DIB expired on December 31, 2013, he cannot be found disabled unless he can establish that a disability existed on or before that date. *Id*.  "Evidence relating to a later time period is only minimally probative."

---

[1] The Court notes that plaintiff treated with Dr. Zook in 2013, some years after writing the letter.  PageID.690-691.  On May 5, 2013, Dr. Zook noted that with respect to plaintiff's past history of iron exposure "recent blood work shows much significant improvement in iron deficiency" and "[t]hat this should not have any significant impact on his symptoms as well as no suggestive support for lead poisoning."  PageID.691.

9

*Jones v. Commissioner of Social Security*, No. 96-2173, 1997 WL 413641 at *1 (6th Cir. July 17, 1997), citing *Siterlet v. Secretary of Health & Human Services*, 823 F.2d 918, 920 (6th Cir. 1987) (where doctor examined the claimant approximately eight months after the claimant's insured status expired, the doctor's report was only "minimally probative" of the claimant's condition for purposes of a DIB claim). Evidence of a claimant's medical condition after the last insured date is only considered to the extent it illuminates that condition before the expiration of the claimant's insured status. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988). The ALJ noted that Dr. Bentley's opinion reflects plaintiff's condition almost two years after his date last insured. As discussed, the ALJ noted that the doctor did not indicate that the limitations related back to the relevant time period (December 5, 2013 through December 31, 2013) and that the doctor provided no treatment records to support her opinion. For these reasons, the ALJ could properly give Dr. Bentley's opinion reduced weight. Accordingly, plaintiff's claim of error will be denied.

### C. The ALJ's residual functional capacity (RFC) findings are not supported by substantial evidence under 20 C.F.R. §§404.1520 and 404.1545.

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. §404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

Plaintiff contends that the ALJ's RFC determination in this case is not supported by substantial evidence. First, plaintiff contends that the ALJ failed to properly address the opinions of his treating medical providers (Drs. Ali, Pawsat, Zook, and Bentley). As discussed, *supra*, the ALJ did not err in addressing those opinions.

Second, plaintiff contends that the ALJ failed to give specific reasons for accepting the opinion of a non-examining State Agency consultant and why she chose to accept that opinion over Dr. Zook's findings. Plaintiff is apparently referring to the ALJ's statement regarding the May 16, 2014, opinion of state agency consultant Jacob Weintraub, MD, who "opined the claimant is capable of lift [sic] and/or carrying 20 pounds occasionally and 10 pounds frequently; stand and/or walking about six hours in an eight-hour workday; sitting about 6 hours in an eight-hour workday; occasionally climbing ramps, stairs, ladders, ropes, or scaffolds; frequently balancing; and should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation." PageID.67. Plaintiff, however, does not cite any authority or develop any argument to support this alleged error. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones."). Furthermore, as discussed, *supra*, Dr. Zook's letter was not an opinion and did not address plaintiff's condition during the relevant time period.

Third, plaintiff contends that the ALJ did not properly address his credibility. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, quoting Myers v. Richardson, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that the

Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

In support of this claim, plaintiff contends that the ALJ's RFC "essentially ignored the [p]laintiff's problems with fatigue even though his physicians stated that fatigue could be a product of the lead poisoning or low testosterone levels." Plaintiff's Brief (ECF No. 10, PageID.1442).

As an initial matter, the ALJ noted that, "[w]hile the record shows a history of elevated lead levels in the claimant's blood, the records show that with treatment, the claimant has no acute lead toxicity (Ex. 8F; 11F)." PageID.65. Next, the ALJ noted that there was "some suggestion" in the record that plaintiff did not leave his employment due to disabling impairments:

> In a September 2008 treatment note, the claimant relayed that he was an unemployed machinist after being laid off (Ex. 2F/3). During a medical appointment in October 2008, the claimant reported that he has been unemployed for reasons unrelated to any health problems and was a choice he made ([E]x. 4F/6). While the claimant cites contributing factors to include difficulty relating to coworkers, he further stated that he felt he needed more time remodeling his house.

PageID.66.

Finally, the ALJ found plaintiff's activities of daily living were inconsistent with the alleged disabling limitations:

> The claimant is able to attend to his personal care, prepare meals, perform yard work, drive a car, go out alone, shop for groceries, manage finances, read for a hobby, and spend time with others (Ex. 6E/2-5; 8E/2-5; 16E/2-5). He also does not need reminders to attend to his personal care or take medication (Ex. 8E/3). Furthermore, the claimant has alleged significant difficulty with focus, concentration, and staying on task. However, he completed a function report in October 2013 by including quite detailed explanations (Ex. 8E). He also indicated that he requires a special diet that requires about one hour to prepare, which he completes himself (Ex. 8E/3). He indicated his spouse works full-time so he prepares more meals. There is also reference to the claimant developing his own business of organic farming and metalworking (Ex. 8F/10).

PageID.66-67. Based on this record, the Court finds no compelling reason to disturb the ALJ's credibility determination. *Smith*, 307 F.3d at 379.

Fourth, plaintiff contests the ALJ's conclusion that he did not have acute lead toxicity. In this regard, plaintiff states:

> However, the test records show that at various times (even after chelation therapy) his lead levels far exceeded the appropriate range: 14 in April 2010 (PageID.638); 5.8 in February 2011 (PageID.1215); 6 in December 2011 (PageID.1341); 5.5 in December 2013 (PageID.1249); 4.7 in August 2014 (PageID.1340); and 3.5 in October 2015 (after 5 chelation treatments). (PageID.1339) Clearly the Plaintiff was not free of the lead or the residual effects of the lead.

Plaintiff's Brief at PageID.1442-1443. Plaintiff provides no explanation or physician's opinion to explain the raw data regarding his lead levels. "[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Commissioner of Social Security*, No. 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000), citing *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988). Accordingly, this claim of error will be denied.

## IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: March 29, 2018 /s/ Ray Kent
United States Magistrate Judge